27 C.C.P.A.(Patents)

In re GREIDER et al.

Patent Appeals No. 4348.

Court of Customs and Patent Appeals.

July 1, 1940.

George W. Mills, Jr., of Lockland, Ohio (Albert F. Robinson, of Lockland, Ohio, of counsel), for appellants.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judge.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting all of the claims of appellants' application for a patent for lack of patentability over the cited prior art.

The claims are numbered 1, 2, 3, 5 to 8, inclusive, 10, 11, 15, 17, 18, 19, 25, 26, and 27. Claims 1, 6, 15, and 27 are illustrative of the claims in issue and read as follows:

"1. A process for reconstituting thermoplastic substance treated fabrics into a felted sheet comprising subjecting thermoplastic substance treated fabrics in which the thermoplastic substance predominates to a disintegrating operation in the presence of an aqueous liquid for simultaneously beating and disintegrating same into a pulp stock with the thermoplastic substance dispersed therethrough, and felting the pulp stock into a sheet.

"6. A process for reconstituting thermoplastic substance treated fabrics into a felted sheet comprising subjecting thermoplastic substance treated fabrics containing granular mineral material to a disintegrating operation in the presence of an aqueous liquid for disintegrating same into a pulp stock with the mineral material and with the thermoplastic substance dispersed therethrough, and felting the pulp stock including the mineral material into a sheet.

"15. A felted product formed from thermoplastic substance treated fabrics, containing granular material, reconstituted in a sheet with the components homogeneously mixed together, the granular material interspersed and the fibers in felted relation.

"27. A process for reconstituting thermoplastic substance treated fabrics into a felted sheet comprising subjecting thermoplastic substance treated fabrics to a beating operation in the presence of an aqueous liquid to form pulped half stock, feeding the pulp between a plurality of members

adapted to roll loosely over each other for refining the fibrous content of the stock and intimately mixing the thermoplastic content therewith, and felting the refined stock into a sheet with the fibrous and thermoplastic contents intimately inter-mixed."

The references cited are: Kirschbraun, 1,417,840, May 30, 1922; Kirschbraun, 1,606,427, November 9, 1926; Kirschbraun, 1,659,401, February 14, 1928.

The application relates to felt reconstituted from waste thermoplastic treated fabrics, and manufacture of the same. The claims include both process and product claims.

The general subject matter of the alleged invention is sufficiently described in the above-quoted claims.

The reference Kirschbraun, 1,417,840, relates to the treatment of paper or felted compositions saturated with asphalt or waterproof binder. In the treatment of felted compositions containing grits, the grits are first removed and the fibres and their contained bitumen are disintegrated in the presence of a heated emulsifying agent. The patent states that the resulting material may be molded by hydraulic pressure into articles such as buckets, etc. The patent further states: " * * * If desired, the pulp may be formed into water-proof sheets to be used as roofings, floor-ings, wall boards, or other waterproof coverings. The articles so produced are dried and if desired, *repressed.*" (Italics ours.)

After describing a modified form of the process the patent states: " * * * This composition can then be *cooled or moulded or sheeted as before described.* Additional fibre or filler such as sawdust may be added to the mixture before the *sheeting* or *moulding.*" (Italics ours.)

The claims in the patent make no mention of the removal of grits.

The reference Kirschbraun, 1,606,427, relates to the disintegration of waste papers such as are used in the making of boxes, containers, or the like. The patent states:

"The distinguishing characteristics of the process described herein, over the process described in my issued United States Patent No. 1,417,840 is that that patent deals primarily with waste saturated felt, which felt was saturated, impregnated or coated with bituminous material, by im-

mersion, after it had been formed into a felted sheet and dried, as is customary in the manufacture of roofing, while the present invention deals primarily with the recovery of waste fibrous stock in which the bituminous waterproofing material with an emulsifying agent was incorporated with the fibrous stock simultaneously with the felting thereof while same was wet.

"Such material as is referred to in the present invention, may have bitumen contained throughout the entire body of the sheet, or board, and in quantities varying from that which produce a minor water-repellant action which fully saturates the sheet, or this waste may comprise the product of a multi-cylinder board machine in which only one or more of the plies, preferably the inner plies, contain heavily asphalted stock while the adjoining plies usually four or five, contain untreated or asphaltic stock. In the latter case the recovery takes place in the presence of a largely predominating amount of untreated stock, the asphalt usually comprising less than 20% by weight of the entire sheet. It will be apparent that there is a difference between stock of the character treated by the present invention, and that of waste saturated felt, in that the waste saturated felt always contains a prepondering amount of asphaltic materials usually of a fairly soft nature, whereas the material treated by the present invention presents a wide range of constitution as regards amounts of bitumen present, the nature of the bitumen, and the presence of the emulsifying agent originally incorporated in the sheet."

The patent further states that "When the waste is composed of hard stock and where the amount of asphalt is relatively great," the process may be supplemented by treatment therein described.

The patent refers to patent No. 1,417,840, together with certain other patents not references herein, and states with respect to such patents as follows:

"More particularly, my prior processes referred to may be carried out as follows:

"I make a suitable non-adhesive bituminous emulsion of, for example, water, colloidal clay and asphalt or other bitumen, in which the bitumen forms the internal phase and the water the external phase of the emulsion. This emulsion may be mixed with the fibrous pulp in the usual beater and the mixture flowed over a paper machine to form a web or sheet, or the

emulsion applied as a coating to the wet web. As the sheet passes over the driers, the water is removed and the bitumen allowed to coalesce."

The last element of some of the claims in this patent calls for "felting the stock on a paper machine."

The reference Kirschbraun, 1,659,401, relates to the same general subject matter of recovering waste fibrous material and refuse. The patent states:

"This invention relates to improvements and processes of recovering fibrous material and refuse, more particularly to the treatment of waste scrap paper containing bitumen, pitches, or the like, in the manufacture of fibrous sheets which are impregnated, saturated or coated with a bituminous or pitchy binder in which it is difficult if not commercially impractical to reuse the waste scrap material because of the difficulty in separating the fibre from the binder. If, on the other hand, the bituminous material is not separated from the fibre, it tends to clog the cylinder moulds and prevents the normal operation of the paper machine. It is therefore necessary to remove the binder from the fibre if the latter is to be reused. In addition to fibrous sheets which are saturated, impregnated or coated in the usual way with asphalt, waterproof sheets are now being made in which the bituminous emulsion is mixed with a fibre stock prior to the stock being felted on the paper machine. An emulsion of the character referred to may be made in accordance with my prior Patent No. 1,417,835. This emulsion as set forth in said patent may consist of suitable bituminous binder and colloidal clay and water.

"The present invention is directed to the separation of the bitumen from the fibre in waste material whether the bitumen be applied to the fibre in the ordinary way, or is applied in accordance with a process set forth in my prior patent above referred to."

Appellants and the Board of Appeals have grouped the involved claims; the first group includes claims 1, 2, 3, 5, 18, 25, and 26; the second group includes claims 6, 7, 8, 10, 11, 15, 17, and 19; claim 27 has received separate consideration.

The examiner rejected all of the claims on any of the reference patents. The Board of Appeals held the first group unpatentable upon the same ground; the board held the second group and claim 27 unpatentable for reasons hereinafter quoted from its decision.

We will first consider the first group, of which claim 1, hereinbefore quoted, is illustrative. This group contains the element that the thermoplastic content of the thermoplastic substance to be treated predominates over the other components, and it is this element, together with the element of "felting the pulp stock into a sheet," that appellants contend patentably distinguishes this group of claims from the references. Appellants do not deny that Kirschbraun No. 1,417,840 discloses starting material in which the thermoplastic substance predominates over the other components, but contend that this patent does not disclose the felting of the material after treatment, or that it is capable of being felted. Appellants' brief states: "* * * Appellants' advance over the art in this group of claims is in reconstituting into a *felted* sheet that type of waste saturated felt material which heretofore could only be formed into a *molded* sheet."

We cannot agree with this contention. Kirschbraun, No. 1,417,840, clearly states that the pulp resulting from his process may be molded by hydraulic pressure into various articles, and further that the pulp may be *formed* into waterproof sheets such as roofings, etc. The patent further states, with respect to a modified form of the process, that the resulting composition may be "cooled or moulded or sheeted," thus distinguishing between molding and sheeting.

The Kirschbraun patent, No. 1,606,427, discloses the use of waste paper where "the amount of asphalt is relatively great" and expressly discloses the felting of the stock resulting from the process upon a paper machine. In appellants' instant specification no distinction is made between the use of waste material in which the thermoplastic substance predominates over the other components and other waste material in which such substance does not predominate. Their specification states: "* * * On the other hand the non-thermoplastic content of the waste roofing material may preponderate in proportion to the thermoplastic content, * * *."

After appellants had appealed to the Board of Appeals from the rejection of their claims by the examiner they sought to amend their specification by cancelling therefrom the phrase above quoted. The

Board of Appeals remanded the case to the examiner for consideration by him of said proposed amendment. The motion to amend was rejected, and that question is not before us as appellants' reasons of appeal make no reference to such action.

We are in agreement with the Board of Appeals that this first group of claims was properly rejected by the examiner upon the grounds stated by him.

With respect to the second group of claims the Board of Appeals in its decision stated: "Claims of the second group are urged as distinguishing over the prior art inasmuch as the grit is retained with the thermoplastic material and incorporated in the final product. The only reference disclosing grit in the starting material is No. 1,417,840 and this describes the grit material as withdrawn through the bottom. We agree with the examiner that the retention of the grit is a matter of choice rather than invention. Obviously, if the same beater is used in the two processes under much the same conditions, the grit material will be separated in both and may or may not be incorporated in the final product depending on whether it is withdrawn or not. This is obviously a matter of choice."

As stated in the quotation the only reference disclosing grit in the starting material is Kirschbraun No. 1,417,840. That patent teaches that in the process of treatment of paper or felted compositions saturated with asphalt the grit should be removed so that the product of the process should be free therefrom. In order to accomplish this object the starting material is put into a cylindrical screen seated in a tank. The screen is immersed in water and is provided with agitating paddles and the screen itself revolves in the tank. The water is heated to nearly the boiling point. The material to be treated is then placed in the cylinder and is subjected to the agitating treatment which detaches the grit from the asphalt coating, the grit falling to the bottom of the tank where it is there recovered. The process set out in the patent is then continued with the resulting product free from grit. In a modification of the process it is stated that the grit is first detached and falls to the bottom of the beater, a section of which "may be provided with a foraminated bottom to allow the grit to pass through," or "the bottom may be corrugated, permitting the grit to accumulate in the grooves of the corrugation."

It appears from the record that on April 28, 1938, after final rejection of the claims by the examiner but before appeal was taken to the Board of Appeals, appellants proposed to amend claims 6, 7, 8, 10, 11, 15, 17, and 19 by specifying the granular material set out in said claims as a grit. This amendment was entered for the purposes of appeal. Upon this point the Board of Appeals stated: "The claims on appeal are considered as changed by the amendment of April 28, 1938."

We therefore consider the claims of the group in their amended form, as above indicated.

Appellants' specification states: "The web after drying, whether embossed or smooth finished, may be further waterproofed by being impregnated with a saturant and/or coated on one or both sides with a layer of thermoplastic material such as a bituminous adhesive compound. Granular surfacing material may also be partially embedded on one or both of the coating layers. Sheets thus produced are particularly adapted for weather surfacing, in that the waterproofing material is more thoroughly dispersed throughout the fibrous content, thereby better protecting same against exposure to the elements. Likewise, the mineral content retained in the pulp stock is thoroughly distributed throughout the felted sheet giving same a more durable character and spacing the fibers therein to increase the permeability of the sheet for the reception of the waterproofing material."

We think that in the above quotation the words "mineral content" clearly refer to grit, and not to the thermoplastic content of the product. Appellants therefore teach the desirability of retaining grit in the product, while Kirschbraun, No. 1,417,840, clearly teaches its elimination, and the inference from Kirschbraun is that a useful product would not be obtained unless the grit was removed from the starting material. With respect to the other references, which do not disclose grit in the starting substance, we think it is fairly inferred from the same that starting material would not be employed in which grit was present.

With respect to the statement of the Board of Appeals above quoted, that "Obviously, if the same beater is used in the two processes under much the same conditions, the grit material will be separated in both and may or may not be incorpo-

rated in the final product depending on whether it is withdrawn or not," we are not in agreement therewith. Appellants place the starting material in a conventional beater, which presumably has no means for the recovery of the grit. According to the process disclosed in Kirschbraun, No. 1,417,840, the grit is first eliminated and the material free from grit is then placed in a disintegrator or beater. In this form of the process, when the starting material is placed in the beater there is no grit present. In a modified form of the Kirschbraun process the starting material is placed directly in a beater, which is described as an "ordinary paper beater except that it is provided with an air tight cover and capable of withstanding pressure and adapted to be heated," and "a section of which may be provided with a foraminated bottom to allow the grit to pass through," or "the bottom may be corrugated, permitting the grit to accumulate in the grooves of the corrugation."

In view of the foregoing, it cannot be said that if the same beater is used in the two processes under the same conditions, "the grit material will be separated in both and may or may not be incorporated in the final product depending on whether it is withdrawn or not." If the beater described by Kirschbraun, No. 1,417,840, is used, it is difficult to see how the grit would be incorporated in the final product, for in one form of the process described in said patent the grit would be removed before being placed in the beater, and in the other form the grit would be deposited in corrugations provided in the bottom of the beater. To use an ordinary beater such as that disclosed by appellants, without first removing the grit from the starting material or providing corrugations in the bottom of the beater for the collection of such grit, would be contrary to the teachings of patent No. 1,417,840. Said last named patent teaches the elimination of grit, while appellants' specification teaches its retention. We therefore cannot say that one skilled in the art would, from the teachings of said last named patent, regard the retention of the grit to be a matter of choice.

We think appellants have omitted one step from the process disclosed in the reference patent, and according to the statements in their application they have secured thereby an improved result.

Upon a motion for reconsideration of the decision of the Board of Appeals here-in appellants called the attention of the board to another decision rendered by it (upon the same day as the decision before was rendered) in a case involving appellants here and one other, wherein the board considered patent No. 1,417,840, here under consideration, and with reference to it stated: "We have noted the examiner's statement that in separation of the grit from the scrap roofing by Kirschbraun some grit might be retained and carried over into the product. However, if such were the fact, this would be purely accidental and this is no reason to hold that the claims are met by the patent product."

The only difference between the claims allowed in that case and the group of claims here under consideration appears to be that the grit was ground, while in the claims before us it is not. This may have been a patentable distinction, although not so referred to in the board's decision in that case.

The board in its decision denying reconsideration of its decision in the case at bar made no mention of its apparently contrary decision in the companion case, although as stated above its attention was drawn to the apparent inconsistency of its decisions in appellants' motion to reconsider.

It is true, as stated in the brief for the Commissioner of Patents, that the general rule is that patentability of a claim may not be based upon the allowance of other claims in another application, and we think that rule is applicable here; but we think it proper to observe that it seems unfortunate that the Board of Appeals did not, so far as the record before us discloses, see fit to distinguish the claims of the two applications or explain the seeming inconsistency in its decisions.

With respect to this second group of claims here under consideration, we are in substantial doubt as to whether they are unpatentable over the cited prior art, notwithstanding the concurring decisions of the Patent Office tribunals, and therefore, under the rule that such a doubt should be resolved in favor of the applicant, we think this group of claims should be allowed.

There remains for consideration claim 27. This claim contains neither the element of the first group of claims relating to the predominance of thermoplastic substance, nor the element in the second group of claims relating to retention of grit in the product.

The element of claim 27 which, it is claimed, is novel and renders the claim patentable is that which provides for feeding the pulp between a plurality of loosely mounted rolls. With respect to this question the examiner stated: "Claim 27 appears to rely upon the use of a ball or rod mill but since this is a common means of disintegrating material in the art this claim is also thought to be lacking in invention over Kirschbraun."

The Board of Appeals in its decision stated: "Claims 11 and 27 include the step of subjection of the product to a refining or rolling operation. It is not urged that such is novel in itself nor is the examiner's statement refuted that such is a common operation in the art. Obviously it may not lend patentability to the steps of an old process in the absence of a showing of unusual or unexpected result."

While claim 11 of the second group, which we have found allowable, contains this element of feeding through a plurality of rolls, this element is not relied upon by us in the allowance of that claim.

Appellants contend that there is nothing in the record to support the statements above quoted from the statement of the examiner and the decision of the Board of Appeals.

 We have repeatedly held that purported statements of facts within the knowledge of the Patent Office are available as references.

In the case of In re Lewis, 96 F.2d 1009, 1011, 25 C.C.P.A., Patents, 1273, after quoting certain statements made in the decision of the Board of Appeals there involved, we said: "The above statement appears to be a statement of facts within the knowledge of an employee of the Patent Office. Such statements are available as references. Appellant, if he wished to question the said statement of facts made by the Board of Appeals, both in regard to the facts themselves or their existence before appellant's filing date, should have proceeded under rules 66 and 76 of the Patent Office. Apparently no affidavit was requested in accordance with said rules, and appellant may not now be heard in this respect to urge that there is no prior art in the record except the patent to Hartley. In re Eliot, 76 F.2d 309, 22 C.C.P.A., Patents, 1088."

Certain affidavits are found in the record concerning this point, but they do not refute the statements of the examiner and the Board of Appeals above quoted.

 Claims 15, 17, and 19 of the second group are product claims. They all contain the element of grit homogeneously mixed together with the other components of the starting material. As there is no reference showing such a reconstituted product, and as the claims are closely related to the process claims here held allowable, we have considered them allowable together with the process claims in that group.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed as to claims 1, 2, 3, 5, 18, 25, 26, and 27, and is reversed as to claims 6, 7, 8, 10, 11, 15, 17, and 19.